In 1973 I.H.M., Inc. owned the Sheraton Motor Inn in Montgomery. During that year William F. Burton, Jr. purchased the property. As a part of that transaction Burton assumed the existing mortgage on the property, executed a promissory note secured by a second mortgage, and also executed with I.H.M. a re-entry agreement whereby I.H.M. could re-enter possession of the premises if Burton defaulted in the payment of the first mortgage.
Thereafter, Burton executed to I.H.M. a collateral note for $100,000, due July, 1975. As collateral for that note, he put up a letter of credit for $100,000.
Burton took possession of the Sheraton and began its operation. To obtain operating monies, Burton and James P. Gillum, doing business as Montgomery Properties (also doing business as Sheraton Motor Inn), applied to Central Bank of Montgomery for a $15,000 loan, executed a demand note in that amount, and subsequently drew approximately $13,000 from the bank. They were indebted to the bank for $11,000 in February, 1975.
Also, in February, 1975, I.H.M. and Burton agreed that I.H.M. would be allowed to re-enter the premises on February 19, 1975, would be allowed to draw on the $100,000 letter of credit in consideration for which, as contended by Burton, I.H.M. would assume all of the debts of the Sheraton Motor Inn, including the indebtedness owed to Central Bank.
When Central Bank called the note, I.H.M. refused to pay, and the bank thereupon brought suit on the note against Burton, Gillum and I.H.M.
Burton filed a cross claim against I.H.M., contending that if he was liable to Central Bank, then I.H.M. was liable to him, under its agreement to assume all of the liabilities of Sheraton Motor Inn. *Page 32 
The case was tried without a jury, at the conclusion of which the trial court entered judgment in favor of Central Bank against all defendants, and judgment in favor of Burton against I.H.M. I.H.M. appealed.
I.H.M. contends that its agreement to pay the debt to Central Bank was an agreement to pay the debt of another; and, because it was not in writing, it is void under the statute of frauds. The trial court found that the agreement of I.H.M. to assume and agree to pay the debt was based upon good and valuable consideration and that, therefore, the statute of frauds did not apply to the transaction.
There is abundant evidence that a valuable consideration passed to I.H.M. in exchange for its promise to assume the Central Bank debt. The bank officer who handled the transaction testified that the bank did not call the note because I.H.M. came to the bank and said that it had assumed the assets and liabilities of Montgomery Properties. But aside from that, it was not disputed that Burton permitted I.H.M. to re-enter the premises on February 19, 1975, and to draw on the bank letter of credit, which was being used to secure a note to I.H.M. which was not yet due. It was Burton's testimony that he allowed I.H.M. to draw on the bank letter of credit, which it had no present right to do, in exchange for its agreement to pay all of the debts of the Sheraton Motor Inn. He also testified that I.H.M. had in fact paid several thousand dollars of Sheraton's debts, but had not paid the Central Bank debt. I.H.M. did not dispute this testimony, nor did it deny that the assets of the Sheraton, plus the $100,000 were sufficient to pay all of the indebtedness of Sheraton, including the note due Central Bank. In addition to the assertions purportedly made to the bank to pay the debt, it was uncontroverted that I.H.M. promised Burton that it would assume that liability. It received consideration for that promise. For this reason alone, the promise is not one to answer for the debt of another, and is not, therefore, within the statute of frauds. At § 186, 72 Am.Jur.2d, Statute of Frauds, the following appears:
"Person to whom promise is made.
 "If the promise to assume the obligation of the debtor is made to a person other than the one presently entitled to enforce the liability so assumed by the promisor, such promise is not one to answer for the debt of another within the meaning of the statute of frauds. Stated positively, the statute is generally held to apply only to oral promises made to a person to whom another is answerable. . . . a promise made to a debtor whereby the promisor undertakes for an adequate consideration to discharge the debt is not within such provision of the statute."
The expression is consistent with Alabama cases on the subject. See: Martin v. Black's Executors, 21 Ala. 721 (1852); Mason v.Hall, 30 Ala. 599 (1857); Moore v. First National Bank ofFlorence, 139 Ala. 595, 36 So. 777 (1903); Byrd v. Hickman,167 Ala. 351, 52 So. 426 (1910); Waters v. Blackmon, 228 Ala. 462,153 So. 739 (1934); and Locke v. Kay, 257 Ala. 376, 59 So.2d 70
(1952).
Although I.H.M. urges reversal of the trial court on its finding that the agreement was not void under the statute of frauds, I.H.M. also claims error in that the trial court permitted Burton to testify to an oral agreement outside the scope of a written agreement between Burton and I.H.M., which I.H.M. contends is the complete agreement between the parties. It would appear that this memorandum in writing, signed by the parties, is a sufficient compliance with the statute of frauds if it applies at all.
The testimony was that after the parties had held a conference at which they agreed that I.H.M. would take over the Sheraton operations, pay the existing debts, and Burton agreed to permit the $100,000 letter of credit to be drawn on by I.H.M., Burton, in longhand, while waiting for an airplane to be serviced, wrote out the following memorandum of agreement, which was signed by all parties: *Page 33 
 "It is agreed by and between the undersigned that in and for the consideration of I.H.M., Inc. being allowed to call a $100,000.00 letter of credit from Third National Bank in Nashville and to re-enter the property known as the Sheraton Motor Inn at Montgomery, Alabama, that the said I.H.M., Inc. and William Brennan, individually will hold William F. Burton, Jr. harmless from all operating expenses of any kind and nature, plus all fixed expenses of any kind and nature incurred after the date of re-entry which is 12:00 p.m. on February 20, 1975, except the mortgage and land lease of Gulf Life in the event the secured indebtedness is accel(l)erated.
 "The 2nd mortgage note of Burton owed to I.H.M., Inc. and Thomas Hartzog shall not be accel(l)erated or draw interest for six months from date hereof or until the mortgage to Gulf Life is in default and the said Gulf Life accel(l)erates the indebtedness secured by the mortgage or unless and until the said Burton commits and (sic) act of public debt relief, in which event Burton does not waive or release any defenses or actions that he might have against any party.
 "Dated and executed this 20th day of February, 1975. All of the above and the distribution of the proceeds of a contemplated sale of the property shall be contained in formal document being prepared by Thomas Lail, Atty.
"International Hotel Management, Inc.
by /s/ William Brennan
"/s/ William Brennan, individually
"/s/ William F. Burton, Jr.
William F. Burton, Jr."
I.H.M. contends that by this agreement I.H.M. agreed to hold Burton harmless from all expenses operating or fixed, incurred after the date of re-entry, but not before. It argues that parol evidence was inadmissible under the rule which prohibits oral testimony to explain, contradict, or vary the terms of a written contract. We do not agree that that rule has any application here. It is clear from the document itself that it was intended only as a memorandum of agreement, and that the parties agreed that a formal document would be drawn to include all of the terms of their agreement. It is also clear that the memorandum agreement is subject to two interpretations. In addition to the interpretation of I.H.M., it can also be read to mean that I.H.M. agreed to hold Burton harmless from all fixed expenses incurred after the date of re-entry, but agrees to hold him harmless from all operating expenses, whenever they occurred.
Under these circumstances, it is perfectly permissible for the court to look to precontract negotiations and the conduct of the parties to determine what was meant by their agreement.C.F. Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644,320 So.2d 657 (1975). In addition, there was no error in allowing parol evidence where there is no doubt that the written instrument was not intended to reflect the full agreement between the parties. In Alabama Power Co. v. Pierre, 236 Ala. 521,526, 183 So. 665, 669 (1938), this court said:
 ". . . there is room for argument that the writing was ambiguous and subject to parol explanation. . . .
 "But that question aside and undetermined, we think the parol agreement admissible upon the theory that it clearly appears the parties never intended that the written conditional sale contract should express their full agreement. . . .
 "As said by Mr. Williston in his work on Contracts, volume 3, section 633: `The parol evidence rule does not apply to every contract of which there is written evidence, but only applies when the parties to an agreement reduce it to writing, and agree or intend that the writing shall be their agreement.'"
We find no error in the record and, therefore, affirm the judgment of the trial court.
AFFIRMED.
HEFLIN, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur. *Page 34