375 So.2d 431 (1979)
HIBBETT SPORTING GOODS, INC.
v.
Ralph BIERNBAUM.
78-290.
Supreme Court of Alabama.
August 24, 1979.
Rehearing Denied September 28, 1979.
*433 J. A. Keller, of Keller & Cochran, Florence, for appellant.
George W. McBurney, of Poellnitz, Cox, McBurney & Jones, Florence, for appellee.
JONES, Justice.
Plaintiff, Hibbett Sporting Goods, Inc., a tenant of Defendant Regency Square Shopping Center, a large retail shopping mall, brought suit to enjoin the mall from also leasing space to Athlete's Foot, Inc. Plaintiff alleged that the contemplated lease to Athlete's Foot, a retail chain specializing in athletic footware, would violate an oral agreement in which one of the mall's owners, Defendant Ralph Biernbaum, promised that he would not lease space to another "sporting goods store" if Hibbett Sporting Goods signed a lease to enter the mall. A lease was subsequently signed, but it made *434 no mention of the previously negotiated oral non-competition agreement. To the contrary, the written lease expressly stated that there were no "restrictive covenants or exclusives in favor of Lessee" and contained, also, a standard merger clause providing that no stipulations or promises had been made apart from those expressly set forth in the lease itself.
Although there was much disagreement at trial as to the definition of "sporting goods" and whether Athlete's Foot was in fact a "sporting goods store," the existence of the oral agreement was not disputed. Nor was there any evidence adduced at trial that the agreement (not to rent to another sporting goods store) had been abandoned, or in any way modified, as a result of subsequent negotiations, so as to be merged into the written instrument.
Defendant objected at trial to the admission of testimony concerning the oral agreement on the basis that it contradicted the written lease and, therefore, was precluded by the parol evidence rule. The trial Court determined that the written lease was "fully integrated, complete, and unambiguous" and applied the parol evidence rule to deny the injunction. Plaintiff appeals.
The parol evidence rule is explained by Corbin as follows:
"When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." 3 A. Corbin, Contracts, § 573, at 357 (1960), cited in Richard Kelley Chevrolet Co., Inc. v. Seibold, 363 So.2d 989, 993 (Ala.Civ.App.1978).
The parol evidence rule, therefore, does not apply to every contract of which there exists written evidence, but applies only when the parties to an agreement reduce it to writing, and agree or intend that the writing shall be their complete agreement. 3 Williston, Contracts, § 633; I.H.M., Inc. v. Central Bank of Montgomery, 340 So.2d 30, 33 (Ala.1976); Alabama Power Company v. Pierre, 236 Ala. 521, 526, 183 So. 665 (1938).
It is often stated that parol evidence is not admissible to vary or contradict the terms of a written contract; however, this abbreviated statement of the rule is misleading because it begs the critical question whether the writing is, in fact, a true and final expression of the agreement made by the parties.
As stated by this Court in Sellers v. Dickert, 185 Ala. 206, 213, 64 So. 40, 43 (1913), cited in Seibold, supra:
"The general doctrine [of the parol evidence rule] necessarily rests upon the existence of a valid written instrument expressing the obligations assumed by or imposed upon the parties. The implication, at least, is that the executed writing contains all stipulations, engagements and promises the parties intend to make or to assume, and that all previous negotiations, conversations, and parol agreements are merged in the terms of the instrument."
Where there exists doubt that the written agreement was ever intended to reflect the full agreement of the parties, the courts of this State have not hesitated to admit contradictory parol evidence of their true agreement. See I.H.M., Inc. v. Central Bank of Montgomery, supra; Alabama Power Company v. Pierre, supra; and Richard Kelley Chevrolet Co., Inc. v. Seibold, supra. See, also, Mayo v. Andress, 373 So.2d 620 (Ala.1979).
Defendants/Appellees argue in brief that the written lease in fact states the full agreement between the parties and they point especially to the merger clause as determinative of this issue. Though it is true that the writing, on its face, is complete and unambiguous, it is equally clear from the undisputed evidence in this case that, with respect to the non-competitive agreement, the lease does not accurately state the full contract between the parties. The existence of the non-competitive agreement unchanged by any subsequent dealings *435 was acknowledged by Defendant Biernbaum himself:
"Q. Do you recall at that time you stated to Mr. Hibbett in substance that you would not rent space to any other sporting goods business?
"A. Yes, I did say I would not rent another sporting goods in the center.
". . .
"Q. Now, there is no provision in this lease prohibiting you or the Mall from putting in a competing business against Mr. Hibbett is there?
"A. It wouldn't be necessary.
". . .
"Q. Was the statement that you wouldn't put in another sporting goods store, was that your statement?
"A. Yes, sir.
"Q. And that is what you agreed to do?
"A. Right.
"Q. And that was separate from the lease?
"A. And I have held to my agreement."
To the extent, then, that the written lease contradicts the actual agreement of the parties, it is simply untrue, and the presence in the writing of a merger clause is immaterial. Paper and ink possess no inherent power to cause statements to be true when they are actually untrue, and a provision in a writing that there exist no previous understandings or agreements not contained therein is merely a statement which actually may be untrue. 3 A. Corbin, Contracts, § 578 at 407-411 (1960).
The parol evidence rule does not prevent the admission of contradictory evidence to establish the truth. 3 A. Corbin, Contracts, § 586 at 489 ff., citing Pruett v. First National Bank of Anniston, 229 Ala. 441, 157 So. 846 (1934); Nearhos v. Keith, 221 Ala. 643, 130 So. 409 (1930). Nor, for that matter, does the rule prevent the enforcement of contracts actually made.
The rule, then, is one of substantive law. It does not exclude certain data because, for one reason or another, they are untrustworthy or undesirable as a means of evidencing some fact to be proved. The rule simply declares that certain kinds of fact are legally ineffective as a matter of contract law. Wigmore, Evidence, § 2400 at 2 (1940). See, also, 3 A. Corbin, Contracts, § 573 at 356, et seq.
Agreements are often the result of protracted negotiations during which terms are modified, or abandoned completely; but once the parties have completed their negotiations and have agreed upon a contract as evidenced by a writing, we are no longer interested in the history of their negotiations for purposes of determining what their agreement might have been had their negotiations proceeded differently. All their negotiations have then been merged into the written agreement and to the extent that the writing is complete and unambiguous, the prior negotiations are irrelevant for determining the terms of their agreement. Southern Guaranty Insurance Company v. Rhodes, 46 Ala.App. 454, 243 So.2d 717 (1971). They are irrelevant because they are of yesterday and can have no jural effect on what has taken place subsequently.
Although a contract can be discharged or modified by subsequent agreement of the parties, no contract can be varied, contradicted, or discharged by an antecedent agreement. Today may control the effect of what happened yesterday, but what happened yesterday cannot change the effect of what happens today.
The parol evidence rule then serves to prevent parties from renegotiating their agreements once integrated in a completed writing and, also, leaves the question whether the writing is in fact a completed integration to the trial judge to determine as a matter of law. It should be noted, however, that on this issuewhether a writing is a complete and accurate integration of the agreement of the parties there is no parol evidence rule to be applied inasmuch as a writing cannot prove itself. A written document by itself, regardless of *436 how long and detailed it may be, cannot prove that the parties have assented to it as the complete and accurate integration of their contract. Seibold, supra, at 993, citing 3 A. Corbin, Contracts, § 573 at 360 (1960). This point, in the context of the parol evidence rule, is emphasized by Wigmore:
"... it needs to be insisted, in opposition to the popular and natural view which tends to thrust itself forward at trials, that a writing has no efficacy per se, but only in consequence of and dependence upon other circumstances external to itself. The exhibition of a writing is often made as though it possessed some intrinsic and indefinite power of dominating the situation and quelling further dispute. But it needs rather to be remembered that a writing is, of itself alone considered, nothing,simply nothing. It must take life and efficacy from other facts, to which it owes its birth; and these facts, as its creator, have as great a right to be known and considered as their creature has .... There is no magic in the writing itself. It hangs in mid-air, incapable of self-support, until some foundation of other facts has been built for it." Evidence, § 2400, at 5 (1940).
The question whether the parties have assented to a writing as a complete and accurate integration of their contract is ultimately one of intent and must be determined from the conduct and language of the parties and the surrounding circumstances. The written document alone is insufficient. Indeed, the very testimony that the parol evidence rule is supposed to exclude is often, if not always, necessary before a court can determine that the parties have agreed upon the writing as a complete and accurate statement of their contract. The evidence that the rule seems to exclude must be heard and weighed before it can be excluded by the rule. 3 A. Corbin, Contracts, § 582 at 450 (1960). See, also, Wigmore, Evidence, § 2430(2). The paradox, however, is only apparent. Parol evidence of the alleged negotiations leading to the written agreement is received by the trial court only on the issue of whether the offered writing was mutually assented to as a complete integration. If, despite the received testimony, the court finds that the writing was mutually assented to as a complete integration, it thereby determines that the negotiations testified to were discharged and nullified by the parties themselves. 3 A. Corbin, Contracts, § 582 at 450, note 80.
In the instant case, the trial Court made such a determination; however, as noted above, the parties to the agreement have acknowledged that the lease signed by them was not a true and complete expression of their agreement and, therefore, there existed no basis for a finding to the contrary. Herein lies the relevant distinction between the instant case and Hartford Fire Insurance Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348 (1960).
In Hartford, where the fully integrated agreement, as expressed in the written policy of insurance, was a disputed issue, the reason for the rule's application was apparent. Here, where the oral agreement not to lease to a sporting goods competitor as part of the bargained for exchange is without dispute, the parol evidence rule has no field of operation. Therefore, the trial Judge erred in finding "that said written lease was fully integrated .. [and] that any such oral statement, agreement, or negotiation was merged into the above referred written lease and ... does not affect the terms of said written lease." The parol evidence rule is thus based on the assumption that the written contract contains the full and exact agreement of the parties; but where admittedly it does not, the reason for the rule ceases.
Although the trial Court made an additional finding "that approximately twelve (12) other business enterprises located in said ... mall sell athletic or sporting footware and soft ware of the type which is sold by the plaintiff," such finding does not justify its legal conclusion "that the plaintiff would not be irreparably damaged by the lease in question." Given the validity of the non-competitive agreement, the remaining issue is whether the proposed *437 lease to Athletic Footware would violate that agreement. It is this issue, then, that is to be resolved upon remand of this cause.
REVERSED AND REMANDED.
MADDOX, SHORES and BEATTY, JJ., concur.
ALMON, J., concurs in the result.
TORBERT, C. J., and BLOODWORTH, FAULKNER and EMBRY, JJ., dissent.
TORBERT, Chief Justice (dissenting):
I respectfully dissent.
It is fundamental that the parol evidence rule prohibits the contradiction of a written agreement by evidence of a prior oral agreement. The rule provides that when the parties reduce a contract to writing, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict such writing. Hartford Fire Insurance Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348 (1960); Richard Kelley Chevrolet Co. v. Seibold, 363 So.2d 989 (Ala.Civ.App.1978); 3 A. Corbin, Corbin on Contracts § 573, at 357 (1960). When the writing is a final expression of the parties' agreement, it is said to be integrated. If the writing is final but not complete, it is partially integrated and consistent terms only can be supplied by extrinsic evidence. If the writing is final and complete, it is totally integrated and not even evidence of consistent terms can be admitted. J. Murray, Jr., Murray on Contracts § 105 (1974); J. Calamari & J. Perillo, The Law of Contracts § 40, at 76 (1970).
Whether the instrument is a final and complete expression of the agreement is to be determined from the conduct and language of the parties, the surrounding circumstances, and the instrument itself. Southern Guaranty Insurance Co. v. Rhodes, 46 Ala.App. 454, 243 So.2d 717 (1971); Pasquale Food Co. v. L & H International Air, Inc., 51 Ala.App. 127, 283 So.2d 438 (1973); 9 J. Wigmore, Evidence § 2430, at 98 (3d ed. 1940). In making such a determination, "the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation." Id. at 98-99; Southern Guaranty Insurance Co. v. Rhodes, supra.
In the instant case, the subject matter of the oral agreement was specifically covered in the written instrument. The written provision was specific, clear, and unambiguous and was directly contradicted by evidence of the oral agreement. Moreover, the lease contained a merger clause providing that "[a]ll negotiations, considerations, representations and understandings between the parties are incorporated in this lease." Therefore, I would conclude that the instrument was final and complete and was meant to represent all of the transaction on that element.
The majority holds that the parol evidence rule has no application because the parties to the lease were not in dispute in what they verbally agreed upon during negotiations. But it is not the conflict in prior negotiations that brings into play the rule, it is the conflict between the clear, specific, and unambiguous document and the agreement attempted to be shown by parol. I believe that mere evidence of agreement between the parties as to a term, later completely negated by the formal writing, is not persuasive that the formal writing was not intended as a final and complete expression of the agreement. The written instrument by its express terms speaks of the precise subject matter embraced by the parol agreement; therefore, the testimony as to the parol agreement is a contradiction of the plain language and integrity of the written contract. See Pasquale Food Co. v. L & H International Air, Inc., 51 Ala.App. 127, 132, 282 So.2d 438, 444 (1973).
I would hold that the prior negotiations were merged into the written instrument *438 even though at one point in the negotiations the parties agreed upon the term attempted to be shown by parol. As the majority themselves state:
Agreements are often the result of protracted negotiations during which terms are modified, or abandoned completely, but once the parties have completed their negotiations and have agreed upon a contract as evidenced by a writing, we are no longer interested in the history of their negotiations for purposes of determining what their agreement might have been had their negotiations proceeded differently. All their negotiations have then been merged into the written agreement and to the extent that the writing is complete and unambiguous, the prior negotiations are irrelevant for determining the terms of their agreement. [Emphasis added.]
Accordingly, I would uphold the judgment of the trial court that the writing was totally integrated and that the parol evidence rule bars the establishment of additional terms by extrinsic evidence. See Guilford v. Spartan Food Systems, Inc., 372 So.2d 7 (Ala.1979).
BLOODWORTH, FAULKNER and EMBRY, JJ., concur.