SHORES, Justice.
Intermodal Transportation Systems, Inc., sued Sterling Distributors, Inc., and Terry Crumpton to recover amounts claimed due on a written lease. The trial court sitting without a jury, entered judgments against Sterling for $13,023.66 and against Crump-ton for $14,586.46. Both defendants appealed, and the cases were consolidated in this Court.
We affirm the judgment against Crump-ton and reverse the judgment against Sterling.
With one exception, the facts material to this appeal are basically undisputed. In early 1976, an agreement existed between Terry Crumpton and The Pabst Brewing Company whereby Crumpton was to haul for Pabst’s benefit tin plate to Pabst’s offices in Perry, Georgia, for manufacture of beer cans and to haul beer from Georgia to various distributors in Alabama, including Sterling. Crumpton determined in February, 1976, that he needed highway trailers to use in his business operations with Pabst.
As a result, an oral agreement ensued on February 27, 1976, between Crumpton and David Toney, regional branch manager of Intermodal, for Crumpton’s lease of several trailers for his business operations. Following the oral agreement, Toney delivered three trailers to Crumpton. A written lease agreement was entered into between Crumpton and Intermodal on March 10, 1976. At this time, Intermodal delivered three additional trailers to Crumpton.
*203 Prior to his February 27, 1976, agreement on behalf of Intermodal to lease trailers to Crumpton, Toney determined that Crump-ton’s credit was unsatisfactory. At Crump-ton’s suggestion, Toney telephoned Chris Mitchell, president of Sterling, to ascertain whether Sterling would guarantee Crump-ton’s obligations under a trailer lease. At trial, Toney testified that Mitchell, on February 27, 1976, verbally agreed over the telephone that Sterling would guarantee all of Crumpton’s obligations under a written lease with Intermodal. In contrast, Mitchell testified under oath that he did not offer an unconditional guarantee of all of Crump-ton’s obligations under a potential lease with Intermodal and had never given an unconditional guarantee to anyone during his thirty years of operating Sterling.
Instead, Mitchell testified that he represented to Toney that Sterling would guarantee payment of rent under the lease as long as Crumpton’s Pabst contract was in effect, provided that Intermodal notify Sterling within ten days after the occurrence of any rental arrearages. He further testified that Toney agreed to these conditions.
On March 1, 1976, Mitchell, consistent with his testimony above, forwarded to To-ney a written conditional guarantee containing the ten-day notice requirement. In-termodal refused to accept the conditional guarantee and tendered the company’s form guaranty agreement to Mitchell, providing for an unconditional guarantee of all of Crumpton’s obligations. Mitchell, through his attorneys, refused to execute the unconditional guarantee, and negotiations continued until April 27, 1976, when Mitchell, as president of Sterling, submitted a written conditional guarantee to Intermo-dal. This guarantee agreement, dated April 27,1976, was accepted by Intermodal.
The guaranty agreement provided as follows:
In consideration of Intermodal Transportation Systems, Inc. executing and entering into the annexed agreement dated the 12th day of April, 1976, with Terry Crumpton, P. 0. Box 448, Childersburg, Alabama 35044, hereinafter called “Lessee,” the undersigned hereby guarantees that if Terry Crumpton defaults in the payment of the rent due from him on unit numbers 245255, 245296, 245301, 245258, 245237, 245291 to Intermodal Transportation Systems, Inc., and Inter-modal gives Sterling notice within 10 days thereafter, then Sterling will pay direct to Intermodal the rental arrearage, so long as Mr. Crumpton continues his present lease arrangement with Pabst Brewing Company.
The trial court found:
2. That Sterling Distributors, Inc. is indebted to Intermodal Transportation Systems, Inc. as a guarantor of the debts of Terry Crumpton pursuant to the terms of an oral, conditional guarantor agreement of February 27, 1976, which was merged into a subsequent written agreement dated April 27, 1976, so as not to be void under the Statute of Frauds, in the amount of Thirteen Thousand Twenty-three and 66/100 ($13,023.66) computed as follows:
Repairs and parts $ 8,454.87
Lost revenue (Oct. & Nov.) 1,944.00
Attorney fees 2,624.79
$14,023.66
Less: Check $1,000 (1,000.00)
Total $13,023.66[1]
Absent the oral, unconditional guarantor agreement of February 27, 1976, which the Court has found merged into the written, conditional agreement of April 27, 1976, Sterling Distributors, Inc. would not be indebted to Intermodal Transportation Systems, Inc. except to the extent of the lost revenue for October and November, 1976 in the amount of $1,944.00, for which the Court finds that Sterling Distributors, Inc. would be liable under the terms of the written agreement of April 27, 1976.
*204 It is undisputed that Crumpton defaulted on the rental payments on or before March 26 and thereafter. He finally returned the trailers to Intermodal in September or October. According to Intermodal, they were damaged. Sterling was first notified that Crumpton was in default in October, 1976. Sterling refused to pay all amounts of which it was not notified within the ten-day period specified in the written guaranty agreement. It did pay $1,347.00, that being the only arrearage of which it had notice within ten days of the default.
Sterling argues vigorously that the trial court incorrectly held that the statute of frauds did not render the alleged oral agreement void. We tend to agree, but need not decide the case on that issue, because we hold that the oral agreement, if there was one, and all prior negotiations between Intermodal and Sterling, as a matter of law, were merged into and incorporated in the final written guaranty agreement of April 27, 1976. This principle of law has been variously stated in a number of cases. In League v. Giffin, 347 So.2d 1332 (Ala.1977), Justice Maddox, speaking for the Court, stated it as follows:
Even though Giffin may have had an oral agreement with League concerning his participation in the project, it is a basic principle of contract law that this agreement as well as all prior negotiations merged into the written contract between the parties. See Blake v. Coates, 292 Ala. 351, 294 So.2d 433 (1974); McGuffey’s Nursing Home, Inc. v. Taylor, 45 Ala.App. 634, 235 So.2d 885 (1970); 5 Ala.Dig., Contracts, Key # 245(2).
347 So.2d at 1333.
The rule was also restated in Hibbett Sporting Goods v. Biernbaum, 375 So.2d 431 (Ala.1979).
The agreement of April 27,1976, is unambiguous, and there is no suggestion that it was the product of fraud on either side. It, therefore, constitutes the only agreement which the law recognizes between Sterling and Intermodal. Thus, the trial court erred in enforcing an alleged prior oral agreement which differed frpm the written one. The written agreement obligates Sterling to pay rent due from Crumpton only where Sterling is notified of the fact of arrearage within ten days of its occurrence. Sterling has paid that amount. The judgment against it is reversed.
The judgment against Crumpton is affirmed. He argues that the trial court erred in holding him individually liable. He asserts that he signed the lease in a representative capacity only and that Crumpton Transports, Inc., was the true lessee. The evidence was undisputed that all negotiations between Intermodal and Crumpton were with Crumpton individually. There was no discussion of a corporation. The credit check which led to the demand for Sterling’s guaranty was made on Crumpton as an individual.
The lease form listed the lessor and lessee as follows:
LESSOR: Intermodal Transportation Systems, Inc.
By: /s/ Michael J. Dennehy, Jr.
LESSEE: Crumpton Transport
P. O. Box 448
Childersburg, Ala. 35044
By: /s/ Terry P. Crumpton
Suffice it to say, there was evidence before the trial judge which supports his finding that Crumpton doing business as Crumpton Transport was the true lessee, rendering him individually liable.
The judgment against Sterling is reversed, and the cause is remanded. The judgment against Crumpton is affirmed.
CASE NO. 80-87 REVERSED AND REMANDED.
CASE NO. 80-331 AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and BEATTY, JJ., concur.

. We recognize that there appears to be an error in the calculations in the trial court’s findings. No issue has been made of this on this appeal.