569 So.2d 332 (1990)
RIME-SHATTEN DEVELOPMENT COMPANY
v.
BIRMINGHAM CABLE COMMUNICATIONS, INC.
88-927.
Supreme Court of Alabama.
September 21, 1990.
*333 F.A. Flowers III and John F. De Buys, Jr. of Burr & Forman, Birmingham, for appellant.
Jere F. White, Jr. and Adam K. Peck of Bradley, Arant, Rose & White, Birmingham, for appellee.
KENNEDY, Justice.
This is an appeal from a judgment entered on a jury verdict in favor of the defendant. We affirm.
The issue is whether the trial court, in interpreting a 1982 contract between the parties, properly excluded evidence of certain pre-contract negotiations that took place in connection with a 1977 contract between the parties.

FACTS
The plaintiff, Rime-Shatten Development Company, is an Alabama general partnership engaged in the business of constructing, leasing, and maintaining apartments. The defendant, Birmingham Cable Communications, Inc. (hereinafter "Birmingham Cable"), provides cable television services to the Birmingham area. Rime-Shatten constructed an apartment complex, Ski Lodge II, and wanted to provide cable television services to the tenants at a bulk rate, as part of the tenant's rent.
In 1977, Mr. Herbert Meisler, a partner in Rime-Shatten, entered into negotiations with Birmingham Cable for the installation and provision of cable television services for the residents of Ski Lodge II. The parties executed a contract on December 20, 1977. At that time, no cable services existed at Ski Lodge II; Birmingham Cable subsequently installed all of the equipment and wiring necessary to provide cable services to the apartments. The contract was to terminate two years after all the apartments in the complex had been available for occupancy for nine months.
The 1977 contract offered Birmingham Cable three options concerning the television equipment and cable wiring once the contract was terminated. Birmingham Cable could leave behind all of the cable television equipment, including the cable wiring installed in the ground and in the walls of each apartment; it could remove certain electronic equipment specified in the contract, but leave the cable wiring in the ground and in the walls; or it could continue to provide cable television services directly to the tenants of Ski Lodge II on an individual basis. The 1977 contract terminated in March 1982. The parties entered into a new contract that became effective immediately upon termination of the 1977 contract. Thus, Birmingham Cable never exercised any of its options under the 1977 contract.
The 1982 contract differed from the 1977 contract. The 1982 contract did not refer to or incorporate the 1977 contract. The 1982 contract provided that upon termination, Birmingham Cable could either remove all "equipment" related to the cable television service or abandon that "equipment" in place. The 1982 contract did not differentiate between the terms "equipment" and "cable wiring" as did the 1977 contract. The 1982 contract also provided that upon termination, if the parties were unable to reach a new agreement, Birmingham Cable could deal directly with the tenants.
In 1984, the parties attempted to negotiate a new contract. A dispute arose over the ownership of the cable wiring. Subsequently, Rime-Shatten placed its own cable wiring in the ground and in each apartment and Rime-Shatten began to supply the tenants of Ski Lodge II with cable services on an individual basis. The original cable wiring installed by Birmingham Cable remained intact. Birmingham Cable also began to furnish cable services to the tenants directly.
Rime-Shatten filed this suit on January 11, 1985, alleging a breach of the 1982 contract. Specifically, Rime-Shatten alleged that Birmingham Cable had breached the 1982 contract by failing either to remove or to abandon "all the equipment." Rime-Shatten contended that the term "equipment" in the 1982 contract did not *334 include cable wiring. Therefore, Rime-Shatten asserted that Birmingham Cable did not own the cable wiring under the 1982 contract but that the cable wiring belonged to Rime-Shatten. Rime-Shatten argued that Birmingham Cable also breached the 1982 contract by using the cable wiring (installed by Birmingham Cable but allegedly owned by Rime-Shatten) to serve the tenants directly without Rime-Shatten's authorization. Rime-Shatten also asserted a fraud claim against Birmingham Cable. Rime-Shatten requested a jury trial on both claims.
The circuit court entered a summary judgment in favor of Birmingham Cable on the fraud claim. The court denied Birmingham Cable's motion for summary judgment on the contract claim.
Before trial, Birmingham Cable filed two motions in limine, requesting, among other things, that the court, in determining ownership of the cable wiring, exclude all evidence of negotiations prior to the execution of the 1977 contract. Birmingham Cable contended that the 1977 contract was unambiguous. Birmingham Cable argued that the facts, circumstances, and negotiations surrounding the making of an unambiguous contract are merged into the written contract, leaving the written contract as evidence of the intent of the parties. Birmingham Cable alleged that both the 1977 contract and the 1982 contract specifically recognized that all of the "equipment" and "cable" wiring that Birmingham Cable had installed at Ski Lodge II belonged to Birmingham Cable.
Mr. Meisler, of Rime-Shatten, stated that in 1977 he objected to the terms of the original draft of the 1977 contract written by Birmingham Cable and that he expressed Rime-Shatten's desire to own the cable wiring at the termination of the contract. At the hearing on the motion in limine, Rime-Shatten argued that its intent to own the cable wiring was evidenced by the terms of the 1977 contract, which distinguished between "electronic equipment" and equipment other than "cable" wiring. Rime-Shatten asserted that representatives of Birmingham Cable had agreed with Mr. Meisler during negotiations that Birmingham Cable owned the "electronic equipment," but that Rime-Shatten owned the "cable" wiring. Rime Shatten asserted that the court should allow evidence of the negotiations prior to the 1977 contract to aid in interpreting the 1982 contract.
After hearing arguments from both parties, the court concluded that the 1982 contract was ambiguous. The ambiguity of the 1982 contract involved language that was included in the 1977 contract but was omitted from the 1982 contract. The court ruled that it would allow the parties to introduce evidence concerning the 1982 contract and any events or conversations occurring before or after the 1982 contract if the evidence was relevant to the intent of the parties regarding the 1982 contract. The court found the 1977 contract to be unambiguous and would not allow the introduction of evidence concerning pre-contract negotiations with respect to the 1977 contract.
The parties then tried their case to a jury. After closing arguments, the trial court submitted the case to the jury with one special interrogatory asking the jury to decide the ownership of the cable wiring at Ski Lodge II. The jury returned a verdict in favor of Birmingham Cable, specifically finding that Birmingham Cable owned the cable wiring at Ski Lodge II. Rime-Shatten appeals.
"The general rule of contract law is that, if a written contract exists, the rights of the parties are controlled by that contract, and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms." Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 11 (Ala.1989); citing Tyler v. Equitable Life Assur. Soc. of the United States, 512 So.2d 55 (Ala.1987); Gunnels v. Jimmerson, 331 So.2d 247 (Ala. 1976). The rule does allow the introduction of extrinsic evidence in the event of fraud, mistake, or ambiguity. League v. Giffin, 347 So.2d 1332 (Ala.1977). The case at bar involves the issue of ambiguity in two separate contracts between the parties.
*335 Whether a contract is ambiguous is a question of law. Fouts v. Beall, 518 So.2d 1236 (Ala.1987); Medical Clinic Bd. of City of Birmingham-Crestwood v. Smelley, 408 So.2d 1203 (Ala.1981). If the court determines that a contract is ambiguous, extrinsic evidence will be allowed to clarify the contract. Cummings v. Hill, 518 So.2d 1246 (Ala.1987). However, once a court determines that a contract is unambiguous, parol or extrinsic evidence will not be allowed as to that contract. Generally, once a court determines that no ambiguity exists in the basic contract, it cannot proceed to examine extrinsic evidence. Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala.1981).
In the instant case, Birmingham Cable and Rime-Shatten had entered into two separate contracts. The first contract in 1977 was found by the trial court to be unambiguous and was deemed to be the sole expression of intent between the parties. We agree.
The parties agreed that the 1977 contract had no legal effect upon the parties after it terminated in 1982. The 1982 contract was a completely separate contract. The 1982 contract did not incorporate or refer to the 1977 contract, but there were similarities. The trial court found that the 1982 contract did not contain any clear clause discussing the ownership of the cable wiring, as did the 1977 contract. The trial court admitted the 1977 contract into evidence as the only evidence of the parties' intent prior to 1977.
When the parties evidence their agreement by a writing, all oral discussion, negotiations, or agreements had or made prior to the execution of the written contract are merged into the final written agreement. Smith v. Chase Manhattan Corp., 458 F.Supp. 740, 744 (M.D.Ala.1978). As this Court stated in Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431, at 435 (Ala.1979), "once the parties have completed their negotiations and have agreed upon a contract as evidenced by a writing, we are no longer interested in the history of their negotiations for purpose of determining what their agreement might have been had their negotiations proceeded differently." This Court has also stated: "Although a contract can be discharged or modified by subsequent agreement of the parties, no contract can be varied, contradicted, or discharged by an antecedent agreement. Today may control the effect of what happened yesterday, but what happened yesterday cannot change the effect of what happens today." Id.
We agree with the trial court's exclusion of evidence of pre-contract negotiations regarding the 1977 contract. We affirm.
AFFIRMED.
HORNSBY, C.J., and JONES and SHORES, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
I concur with the majority opinion. I write specially only because I was the author of Clark v. Albertville Nursing Home, Inc., 545 So.2d 9 (Ala.1989), a case relied on by Rime-Shatten Development Company in both of its briefs. In Clark, the clause at issue in the second lease that created an ambiguity was identical to the clause in the first lease. Both leases were ambiguous. In the present case, the trial court found that the first contract was unambiguous. To me, Clark is distinguishable from this case.