This is a contract action for damages or specific performance with a counterclaim for fraud. The trial court granted summary judgment for plaintiff on the question of liability and entered judgment on a jury verdict awarding $12,264.59 in damages. Defendants argue that the trial court erred in finding liability as a matter of law because, they say, they raised material questions of fact arising from parol evidence which should be admissible at trial.
Defendant Thomas W. Richardson, Sr., is the president and major stockholder of defendant Rich Crest Homes, Inc. On January 21, 1982, Rich Crest executed a contract whereby it agreed to purchase eight lots of land from Vaughn Place, Inc., for $136,342.01. The contract recited that Rich Crest paid $5,872.50 earnest money and provided:
 "The balance of $130,469.51 shall be due and payable on or before July 21, 1982. Interest on the balance of $130,469.51 shall begin on January 21, 1982 and shall be at the rate of 15% or 1% above [First Alabama Bank] prime whichever is less."
This contract was a renewal of a contract originally executed on June 1, 1979. The June 1979 contract was for the sale of twelve lots for $168,450.00. That contract was executed on a form for real estate sales contracts. The 1979 contract stated:
 "[I]f said title is merchantable or is made merchantable by the Seller within a reasonable time, and the Purchaser fails and refuses to carry out this contract in accordance with all its terms, then at the Seller's option, either the earnest money shall be forfeited to the Seller as liquidated damages and this contract, in such event, shall be no longer binding on the Seller or Seller may proceed with specific performance of this contract."
(Emphasis added.)
Vaughn Place completed its work of preparing the lots for sale, such as paving the roads and recording the plat, on December 20, 1979, and so notified Rich Crest. The contract provided that "the sale shall be closed in 12 months" after Vaughn Place completed this work.
On December 21, 1980, Vaughn Place and Rich Crest entered into a new agreement, whereby Rich Crest was to purchase eight of the lots listed in the original contract. During the interim, Rich Crest had purchased the other four lots. The consideration listed in the new contract was $117,450.00, with an earnest money payment of $5,872.50. This contract was renewed on June 21, 1981, and on January 21, 1982, with accumulated interest added into the purchase price. The January 1982 contract made the basis of suit recites that the purchase price includes $18,891.99 interest.
The December 1980 contract is written on a form different from that used in the original contract. Both renewals of the December 1980 contract are on the same form as the December 1980 contract, with changes only in the dates, the interest rates, and the sales price including interest. The principal difference, for the purposes of this appeal, between the 1979 contract and all of the subsequent contracts is that the above-quoted language regarding the seller's options upon default is not included in the later contracts.
After the July maturity date of the January 1982 contract passed without the sale taking place, Vaughn Place wrote a letter to Rich Crest suggesting the execution of another renewal contract. When Rich Crest did not execute such a contract, Vaughn Place brought this suit, seeking alternatively damages for breach or specific performance. Rich Crest defended and counterclaimed on the basis of alleged misrepresentations as set forth below. The trial court granted summary judgment for Vaughn Place on both the complaint and the counterclaim, reserving the question of damages for jury trial.
Rich Crest argues that the parties made an oral agreement that if Rich Crest was unable to complete the purchase Vaughn Place's only remedy would be to retain the earnest money deposit as damages. It argues that the parol evidence rule does not bar admission of this oral agreement because *Page 1125 
the contract is silent on the rights of Vaughn Place in the event of default by Rich Crest or because the evidence regarding the oral agreement would be admissible to prove fraud by Vaughn Place.
Rich Crest cites authorities for the proposition that the parol evidence rule does not bar admission of oral agreements not reflected in a written contract if the writing does not express the entire agreement of the parties. It argues that the question whether the parties have assented to a writing as a complete and accurate integration of their contract is ultimately one of intent and must be determined from the conduct and language of the parties and the surrounding circumstances. See, e.g., Hibbett Sporting Goods, Inc. v.Biernbaum, 375 So.2d 431 (Ala. 1979); I.H.M., Inc. v. CentralBank of Montgomery, 340 So.2d 30 (Ala. 1976).
No exception to the parol evidence rule such as those found in the above-cited cases applies here. In Hibbett, the defendant admitted the oral agreement. In I.H.M. the written document was only a memorandum and did not purport to reflect the full agreement of the parties. Vaughn Place does not admit the alleged oral agreement, and the contracts express on their face sufficient terms to constitute an entire contract. Each contract recites, "This contract contains the entire agreement of the parties hereto."
The substance of the alleged oral agreement was contained in the original contract but not in the later ones. Rich Crest should not be heard to contradict the later writings, both because a careful reading of the renewal contracts would have put it on notice of the deletion of the liquidated damages provision and because there were reasons inferrable from the circumstances to support that deletion. At the time the second contract was executed, Rich Crest was in default on the first. It would be reasonable to interpret the later contracts as placing upon Rich Crest the cost of postponing its duty to tender payment for the lots.
Thus, the deletion of the language is not strictly attributable to a change in forms, but can be explained as a change in terms to fit changed circumstances. These facts are apparent upon an inspection of the documents and so the trial court did not err in holding as a matter of law parol evidence would not be admissible.
The summary judgment is also sustainable against Rich Crest's argument that it presented a question of material fact on the issue of fraud raised in its affirmative defense and in its counterclaim. Recovery for fraud requires proof of reasonable reliance. Code 1975, § 6-5-101; Torres v. State Farm Fire Casualty Co., 438 So.2d 757 (Ala. 1983); Bedwell Lumber Co. v.T T Corp., 386 So.2d 413 (Ala. 1980).
Richardson's own deposition shows that he had reason not to rely on representations made by the principals or agents of Vaughn Place but not reflected in the written contract. Richardson had had difficulty in dealings with Ted Copeland, the owner of Vaughn Place, which took place prior to the renewals of the 1979 contract. In fact situations similar to the one presented here, Richardson had not bought lots for which he had contracted because, as he said, "the bottom fell out" of the real estate market. When Copeland threatened to sue, apparently for damages or specific performance, Richardson made arrangements to purchase the lots. Richardson said:
 "I did not understand because I have had other developers when time came that they accepted the binder and that was it. But Copeland had it written in his contract where he would sue me. So when I found out that's the way he did business, then of course I started being very careful about dealing with Ted Copeland and his company."
Richardson's admissions would preclude a finding that he reasonably relied on oral representations that, contrary to the terms of the documents, he would be liable only for the earnest money if he were unable to consummate the purchases. Thus, the trial court did not err in granting *Page 1126 
summary judgment on both the complaint and the counterclaim.
Rich Crest and Richardson also argue that the trial court erred in holding that the contract rate of interest stated in the 1982 contract would apply to the period between the maturity of that contract and the award of damages. Vaughn Place cites Code 1975, § 8-8-10:
 "Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract. . . ."
The act amending § 8-8-10 to read as it now does took effect May 4, 1982. See 1982 Ala. Acts 82-443, p. 696. The cause of action arose when Rich Crest breached its contract on July 21, 1982. Judgment was entered more than two years later. No error is presented. Cf. Jones v. Casey, 445 So.2d 873 (Ala. 1983).
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur.